## Commonwealth *v.* One 1955 Buick Sedan (Scott, Appellant).

134

Argued March 22, 1962. Before RHODES, P. J., ER-VIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Edward K. Nichols, Jr.,* with him *Norris, Green, Harris and Higginbotham,* for appellant.

*Russell C. Wismer*, Special Assistant Attorney General, with him *George G. Lindsay* and *Horace A. Segelbaum*, Assistant Attorneys General, and *David Stahl*, Attorney General, for Commonwealth, appellee.

OPINION BY ERVIN, J., June 13, 1962:

A hurricane, named *Mapp v. Ohio*,[1] swept over our fair land last June. The present case is one of the numerous appeals coming to our Court as part of the backlash. It now becomes our duty to endeavor to reassemble the machinery for law enforcement in our Commonwealth.

It is apparently the view of many criminal defendants, as well as their counsel, that they may use *Mapp* as an escape hatch to be relieved from punishment for crimes of which there can be no reasonable doubt as to guilt. The *Mapp* case involved a search of a woman's dwelling house and pretty rough treatment was accorded to her by the police officers. It flatly decided that evidence obtained by searches and seizures in violation of the United States Constitution is, by that same authority, inadmissible in a state court. To put it another way, the right of persons and houses to be secure from unreasonable searches and seizures, guaranteed by the fourth amendment of the Federal Constitution, was made applicable to the states through the due process clause of the 14th amendment.

This proceeding was instituted by the Pennsylvania Liquor Control Board seeking a court order for forfeiture of a motor vehicle used in the illegal transportation of white untaxed whiskey. A motion to suppress the evidence and have the motor vehicle returned to the owner was presented to the court. The court below overruled the motion to suppress the evidence and or-

---

[1] *Dollree Mapp, etc. v. Ohio*, 367 U. S. 643, 81 S. Ct. 1684, decided June 19, 1961.

dered the forfeiture of the motor vehicle. The owner appealed.

Two Philadelphia police officers testified they had a house in Philadelphia under observation for a period of four days (two days in each week prior to the arrest and seizure) as a result of information that there was an odor of alcohol in the area. Their observations led to the conclusion that a still was in operation at 7253 Saybrook Avenue. On the day of the arrest and seizure, September 14, 1961, while the property was under observation by the officers, the owner of the car, Scott, drove up to the property and entered. The officers knew that Scott "had a previous record of alcohol." The court below improperly excluded this testimony. The motor vehicle was being tried, not Scott. This evidence was admissible to show what the officers took into consideration on the question of probable cause: *Husty v. United States,* infra. Scott remained there about one hour during which time he made several trips from the house to the car and back again. On his last trip he carried a carton which he placed on the back seat of the car and drove away. The officers followed and stopped Scott about a block and a half away for investigation.

On the back seat of the car the officers found four one gallon jugs of a white untaxed whiskey. Scott was arrested and his car seized. The arrest and seizure were made without a warrant. After the arrest the officers secured a search warrant for premises 7253 Saybrook Avenue, where they found a still.

At the time Scott was stopped by the officers he said: "That's all I have. That's it." At no time did Scott object to the search of his car.

The procedure for the forfeiture of this car is provided by §601 of the Liquor Code (as amended by the Act of April 20, 1956), 47 PS §6-601, and in effect states: "No property rights shall exist in any liquor, alcohol

or malt or brewed beverage illegally manufactured or possessed, or in any still, equipment, material, utensil, vehicle, boat, vessel, animals or aircraft used in the illegal manufacture or illegal transportation of liquor, alcohol or malt or brewed beverages, and the same shall be deemed contraband and proceedings for its forfeiture to the Commonwealth may, at the discretion of the board, be instituted in the manner hereinafter provided."

The fourth amendment of the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrant shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

A guarantee of freedom from unreasonable searches and seizures has been construed by the Supreme Court of the United States in a number of cases recognizing the difference between a search of a dwelling house or other structure in respect of which a search warrant may readily be obtained, and a search of a ship, motor boat, wagon or automobile for contraband goods, where it is not practicable to secure a warrant because a vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought. See Annotation in 92 L. ed. 221.

The leading case in this field is *Carroll v. United States*, 267 U. S. 132, 149, 69 L. ed. 543, wherein Chief Justice TAFT said: "On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid. The 4th

Amendment is to be construed in the light of what was deemed an unreasonable search and seizure when it was adopted, and in a manner which will conserve public interests as well as the interests and rights of individual citizens."

The *Carroll* case was one in which Federal officers stopped and searched a car they knew to be involved in bootlegging. They had no search warrants but seized liquor found in the automobile. In that case the Supreme Court sustained the conviction of the defendants who were illegally transporting liquor in the automobile. At p. 153 it was further said: "We have made a somewhat extended reference to these statutes to show that the guaranty of freedom from unreasonable searches and seizures by the 4th Amendment has been construed, practically since the beginning of the government, as recognizing a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon, or automobile for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.

"Having thus established that contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant, we come now to consider under what circumstances such search may be made. It would be intolerable and unreasonable if a prohibition agent were authorized to stop every automobile on the chance of finding liquor, and thus subject all persons lawfully using the highways to the inconvenience and indignity of such a search. Travelers may be so stopped in crossing an international boundary, because of national self-protection reasonably requiring one entering the country to identify himself as entitled to come in, and his belong-

ings as effects which may be lawfully brought in. But those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise."

It was further said, at pp. 155, 156: "The measure of legality of such a seizure is, therefore, that the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes has contraband liquor therein which is being illegally transported."

Chief Justice TAFT quoted with approval what was said in *Stacey v. Emery*, 97 U. S. 642, 645, 24 L. ed. 1035, 1036: "If the facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offense has been committed, it is sufficient."

Our Pennsylvania Supreme Court has defined "probable cause" as "a reasonable ground for belief of guilt" and it further said it is dependent upon "the honest and reasonable belief of the party prosecuting." *McCarthy v. De Armit*, 99 Pa. 63, 69.

The *Carroll* case was followed by *United States v. Lee* (1927), 274 U. S. 559, 71 L. ed. 1202, 47 S. Ct. 746 (motorboat); *Husty v. United States* (1931), 282 U. S. 694, 75 L. ed. 629, 51 S. Ct. 240, 74 A.L.R. 1407 (automobile); *Scher v. United States* (1938), 305 U. S. 251, 83 L. ed. 151, 59 S. Ct. 174 (automobile).

Our own Court, in *Com. v. Sullivan*, 91 Pa. Superior Ct. 544, said that the 9th section of the Act of March 27, 1923, P. L. 34, authorizing any officer to arrest without a warrant any person discovered in the act of transporting intoxicating liquor, is a constitutional exercise of the police power of the Common-

wealth of Pennsylvania. In that case we also defined "probable cause", on p. 547, when we quoted with approval the following language from *Com. v. Rubin*, 82 Pa. Superior Ct. 315: "When the officer believes from his own observation, or from information from sources so reliable that a prudent person, having due regard for the rights of others, would act thereon, and has reasonable and probable cause to believe, that a vehicle is engaged in unlawful transportation in his presence, he may arrest, search and seize without a warrant."

In *Chapman v. United States*, 365 U. S. 610, 615, 81 S. Ct. 776, 779, rendered April 3, 1961, the Supreme Court, constituted the same as it was two and one-half months later when it handed down the *Mapp* decision (June 19, 1961), stated: "Here, as in that case [Johnson v. United States] 'No reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate. These are never very convincing reasons and, in these circumstances, certainly are not enough to bypass the constitutional requirement. No suspect was fleeing or likely to take flight. The search was of permanent premises, not of a movable vehicle. No evidence or contraband was threatened with removal or destruction, except perhaps the fumes which we suppose in time would disappear.' 333 U. S. at page 15, 68 S. Ct. at page 369." While this was obiter dictum it at least revealed the present thinking of the Supreme Court on this subject.

We are, therefore, of the opinion that the police officers in the present case had probable cause for the search and seizure of the automobile involved in these forfeiture proceedings. It would have been unreasonable to expect the officers to go some distance away and obtain a warrant for search and seizure when the moving automobile, within a few minutes, probably would have been out of reach of the officers.

The order of the court below overruling the motion to suppress the evidence and ordering the forfeiture of the motor vehicle is affirmed.

---

DISSENTING OPINION BY WATKINS, J.:

I would reverse the Decree of Forfeiture of the Court below for the reason that the evidence obtained was without warrant in violation of the Fourteenth Amendment and so constituted illegal search and seizure, and the defendant's motion to suppress should have been sustained. *Mapp v. Ohio,* 367 U. S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (June 1961).

The officers were observing the building and the automobile for four days and during the entire time had probable cause to obtain the necessary warrant. This could have been at any time during the four days without interrupting surveillance and to say, as the majority opinion does, that "it would have been unreasonable to expect the officers to go some distance away to obtain a warrant for search and seizure when the moving automobile, within a few minutes, probably would have been out of reach of the officers," is a tortured interpretation of the facts.