## Commonwealth, Appellant, *v.* Wright.

Argued November 28, 1962. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

reargument refused May 24, 1963.

*Arlen Specter,* Assistant District Attorney, with him *Louis F. McCabe,* Assistant District Attorney, *F. Emmett Fitzpatrick, Jr.,* First Assistant District Attorney, and *James C. Crumlish, Jr.,* District Attorney, for Commonwealth, **appellant.**

*Martin Vinikoor,* with him *Marvin S. Baker,* for appellee.

OPINION BY MR. JUSTICE EAGEN, April 16, 1963:

The Commonwealth appeals from an order of the Court of Oyer and Terminer of Philadelphia County, granting the petition of the defendant, Walter Wright, under indictment for murder, to suppress certain money evidence allegedly obtained through an illegal search and seizure.

The relevant facts may be stated thusly: On October 26, 1961, at about 3:15 a.m., an armed robbery of a taproom in South Philadelphia occurred, during which the bartender was shot and killed. Information given the police pointed the finger of suspicion at the defendant, who was arrested without a warrant in his apartment about 6:15 a.m. on the same day. The legality of the arrest is not questioned. At the time the defendant was taken into custody, the apartment was searched but nothing material was found.

Following the arrest, the defendant was taken to police detective headquarters and questioned.

About 10:30 a.m., the police investigating officers returned to the defendant's apartment. Up to this point, the defendant had not made any incriminating statements. No search warrant had been issued or was in their possession. The officers were met in the hallway by the defendant's wife and they told her that her husband was under arrest. They also told her that he had admitted the crime and sent them for the "stuff." This latter statement was false. Admittedly, the wife was frightened and upset. She admitted them to the apartment and immediately told them that her husband had returned home earlier in the morning in a highly excited state and asked her the whereabouts of the "doll with the hole in it," which was a doll with a zipper in the back. She related that the defendant had opened the zipper and stuffed money into the opening. The police then picked up a doll, but the wife said that it was not the one and pointed to another. An examination of this last mentioned doll revealed the presence of one hundred sixteen dollars inside.[1] It is this evidence that is the subject of the attack in this proceeding.

---

[1] Following this, the officers made another search of the apartment trying to locate a gun, but to no avail.

Subsequently, the defendant made a written statement admitting participation in the crime.

Two questions are raised in this appeal: (1) Does the Commonwealth have the right to appeal from the order of suppression? (2) Was there a valid consent by the defendant's wife to a search of the apartment so as to waive any constitutional guarantees the defendant personally enjoyed against unlawful search and seizure of his home?

The first question involving the right of the Commonwealth to appeal herein has been effectively answered by this Court in the scholarly opinion of Mr. Justice JONES in the case of *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A. 2d 304 (1963).

The second question requires attention and is determinative.

*Mapp v. Ohio*, 367 U.S. 643 (1961), ruled that "all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court." (page 655). Such rule of exclusion being "an essential part of both the Fourth and Fourteenth Amendments . . . ." (page 657). Save in certain cases as incident to arrest, there is no sanction in the decisions of the courts, federal or state, for the search of a private dwelling without a warrant: *Agnello v. U.S.*, 269 U.S. 20 (1925); *United States v. Rabinowitz*, 339 U.S. 56 (1950). However, it is likewise the law that the constitutional right prohibiting an unreasonable search and seizure may be waived *by the defendant personally*: *Judd v. U.S.*, 190 F. 2d 649 (1951); *Com. v. Bosurgi*, 198 Pa. Superior Ct. 47, 182 A. 2d 295 (1962), aff'd 411 Pa. 56, 190 A. 2d 304 (1963); 58 A.L.R. 737 (1929). It has also been held that such consent or waiver is valid even if made under a threat to procure a search warrant: *U.S. v. Haas*, 106 F. Supp. 295 (1952).

The federal court decisions, as to whether or not the consent given by one spouse to search their common dwelling house is binding upon the other in his or her absence, are not in accord. In the following instances, the consent was held binding: *U. S. v. Heine*, 149 F. 2d 485 (2 Cir. 1945), cert. denied 325 U.S. 885 (1945); *United States v. Sergio*, 21 F. Supp. 553 (E.D. N.Y. 1937). In *United States v. Rykowski*, 267 Fed. 866 (E.D. Ohio 1920), such consent was held legally ineffective as to the other spouse. However, it is established beyond argument that such consent to be valid must be unequivocal, specific and voluntarily given without the presence of duress or coercion, actual or implied: *Amos v. United States*, 255 U.S. 313 (1921); *Judd v. United States*, supra; *Johnson v. Zerbst*, 304 U.S. 458 (1938). Moreover, searches and seizures made without a proper warrant are generally regarded as unreasonable and violative of the Fourth Amendment and the burden is upon the searcher to prove the presence of consent or waiver by clear and positive testimony: *Amos v. United States*, supra; *Judd v. United States*, supra, and *Johnson v. Zerbst*, supra. Further, it is well established that the consent may not be gained through stealth, deceit or misrepresentation, and that if such exists this is tantamount to implied coercion: *United States v. Guerrina*, 112 F. Supp. 126 (1953); *Moyer v. Brownell*, 137 F. Supp. 594 (1956); *Fraternal Order of Eagles No. 778 v. U. S.*, 57 F. 2d 93 (1932); *United States v. Mitchneck*, 2 F. Supp. 225 (1933); *Weeks v. United States*, 232 U.S. 383 (1914); *Gouled v. United States*, 255 U.S. 298 (1921); *Amos v. United States*, supra. Even if we assume, as the Commonwealth contends, that the evidence was obtained without a search, under the circumstances, this is not controlling. The seizure was gained through the use of deceit and misrepresentation. This vitiated the seizure just as effectively as if a search

were involved. In addition, it was not made legal by the fact of what was obtained or seized. See, *United States v. Asendio,* 171 F. 2d 122 (1948) ; *Byars v. U. S.,* 273 U.S. 28 (1927).

In view of the circumstances herein present, the lower court correctly concluded that coercion was present and that the Commonwealth had failed in its burden to prove the alleged consent of the wife was valid. The order of suppression was, therefore, properly entered.

Order affirmed.

———

DISSENTING OPINION BY MR. JUSTICE COHEN:

Unlike the cases of *Commonwealth v. Bosurgi,* 411 Pa. 56, and *Commonwealth v. Cockfield,* 411 Pa. 71, the evidence in this case was not obtained as a result of a search and seizure. Hence, *Mapp v. Ohio* is inapplicable and we need not consider the problem raised by that decision of what standards govern the admissibility of evidence secured through an invasion of privacy.

Since *Mapp* is inapplicable, the issue of whether the misrepresentations made by the police officers require a suppression of this evidence is determined, just as before *Mapp,* by the test set forth in *Rochin v. California,* 342 U.S. 165 (1952). In that case, the United States Supreme Court held that the fourteenth amendment only requires state courts to suppress evidence obtained by police methods which either "shock the conscience" or "offend a sense of justice." I would hold that the police tactics employed here of utilizing the efforts of a cooperative wife to secure evidence against the defendant do not rise to the level of this Constitutional proscription. Since the fourteenth amendment does not require its suppression, the evidence is admissible under Pennsylvania law.

I dissent.

Mr. Chief Justice BELL joins in this dissenting opinion.