## Commonwealth v. Poulson

*Thomas Reed*, for Commonwealth.

*Garfield Levy*, for defendant.

SPORKIN, J., December 9, 1963.—Robert Poulson, defendant, came to trial before the writer of this opinion and a jury on April 10, 1963, on an indictment charging burglary, larceny and receiving stolen goods.

Following his conviction of burglary and larceny, defendant filed a motion for a new trial, assigning the usual formal reasons in support thereof, viz: the verdict was against the law, the verdict was against the weight of the law, the verdict was against the evidence, and the verdict was against the weight of the evidence. In addition thereto, defendant requested leave to file additional reasons[1] upon receipt of the notes of testimony.

On July 1, 1963, we denied the motion for a new trial and sentenced defendant to a term of imprisonment of not less than two years nor more than seven years. From the said judgment of sentence, defendant has filed the instant appeal and this opinion is prepared and filed to set forth the basis and reason for the denial of defendant's motion for a new trial as required by Superior Court Rule No. 43.

It is to be noted that prior to the present trial, defendant moved to suppress evidence which had been obtained by the police on December 4, 1959. Judge Weinrott dismissed the motion to suppress, following a hearing on October 13, 1961, at which evidence as to the facts and circumstances of the search and seizure were presented by the Commonwealth.

---

[1] The formal reasons assigned to support the motion for new trial have been abandoned by defendant, and two additional reasons were presented as indicated by letter from his attorney dated September 26, 1963, reading as follows:

"This will confirm our conversation of last week, wherein I informed you that I intend to present to the Superior Court of Pennsylvania the following issues in the above entitled matter:

"1. The search and seizure of the defendant's vehicle and person were illegal and in violation of article 1, section 8 of the Pennsylvania Constitution and the Fourteenth Amendment of the United States Constitution .

"2. The question of whether or not the search and seizure was illegal and whether or not the evidence resulting therefrom was to be suppressed should have been presented to the jury for decision."

At the trial before us, testimony as to that very search and seizure was also offered and counsel for defendant again moved to suppress the evidence thus obtained, which motion we denied.

As recently as December 6, 1963, counsel for defendant abandoned the second of the two questions, set forth in footnote 1, supra, i.e., whether the question as to the alleged illegality of the search should have been presented to the jury, thus leaving as the only question to be argued in support of the present appeal the question of whether the search and seizure of defendant's vehicle and person were illegal and in violation of article 1, section 8 of the Pennsylvania Constitution and the Fourteenth Amendment of the United States Constitution. See footnote 1, supra.

We will accordingly confine this opinion to this latter question.

The facts pertaining to the search and seizure as shown at the hearing on the motion to suppress, as well as before us at trial, are:

For sometime prior to the search and seizure here in question, a rash of burglaries had been committed in the northeast section of Philadelphia and in adjacent Abington Township of Montgomery County. On the evening of December 4, 1959, Sergeant George Green of the Abington Township Police Department and Detective Joseph Quinn of the Philadelphia Police Department were on special assignment, pooling their efforts to track down the perpetrators of these burglaries. About 8:20 p.m. of that evening, the officers observed a blue Cadillac sedan bearing New Jersey license plates, moving toward them. The two passengers in the automobile were recognized by the officers as being the Blaney brothers (Richard and Vincent, both since deceased), and the third occupant, defendant, (driver) was known to one of the officers. The officers knew all three to be professional burglars. They stopped the car

for a routine check, requested the three occupants to alight, and searched them and the automobile.

Under the rear seat of the automobile, the police found 15 silver dollars, and 2 old-style dollar bills, 1923 series. They found a blue plastic handle screw-driver wedged in the front seat, and a pair of brown woolen gloves under the sun-visor on the driver's side of the car. A later search disclosed another pair of gloves, two flashlights, a jeweler's diamond gauge and a pair of binoculars.

The three men were taken to a station house for interrogation. While this was taking place, the police received a report of another burglary which had occurred earlier that evening in the same neighborhood at the home of one John W. Campbell. When the police completed their initial investigation they ascertained that the money found in defendant's automobile under the rear seat was part of the loot taken from Campbell's residence.[2] Following its identification by the owner, defendant and the Blaneys were placed under arrest and charged with the offenses in respect of which defendant was tried, and of which he stands convicted.

Since the sole question now raised is the legality of the search and seizure, present purposes do not require a recitation of the factual background of the case in any great detail. Suffice it to say that the guilt of defendant was established beyond any reasonable doubt.

The legality of any search and seizure depends on whether it was proper and reasonable under all the circumstances. As was said in United States v. Rabinowitz, 339 U. S. 56, 63 (1950):

"What is a reasonable search is not to be determined by any fixed formula. The Constitution does not define

---

[2] Samples of paint and varnish which matched the paint and varnish on one of the jimmied doors of the Campbell residence, were found on the clothing of defendant, on three pairs of work gloves, and on the screwdriver.

what are 'unreasonable' searches and, regrettably, in our discipline we have no ready litmus-paper test. The recurring questions of the reasonableness of searches must find resolution in the facts and circumstances of each case . . ."

There is a long line of cases which set out a doctrine of reasonable conduct with respect to the necessity for immediately stopping and searching an automobile, commencing with Carroll v. United States, 267 U. S. 132 (1925). It was said in Carroll, at page 147, and repeated in numerous cases:

"The Fourth Amendment does not denounce all searches or seizures but only such as are unreasonable," and, ". . . the search and seizure are valid."

See also Brinegar v. United States, 338 U. S. 160 (1949).

The appellate courts of our State have always recognized that the only standard by which a search and seizure is to be tested is that of reasonableness under all the circumstances and whether probable cause for the search and seizure existed. Cf. Commonwealth v. Richards, 198 Pa. Superior Ct. 39 (1962); Commonwealth v. Bosurgi, 411 Pa. 56 (1963).

The totality of the facts of the instant case support the search and seizure, which was reasonable and made upon probable cause. The police officers were on special assignment endeavoring to solve a series of burglaries concentrated in a specific area. They encountered an automobile and recognized its three occupants as professional burglars. In our view, it was reasonable for the officers to stop the vehicle and to conduct a search of the occupants as well as the car. We believe that they had probable cause so to do, and had they failed to act as they did, they would have been derelict in their duty. The officers diligence disclosed the fruits of a burglary which had been committed that very evening. We see no reason for holding that the search or seizure was unreasonable.

Accordingly, we denied defendant's motion for a new trial.