**Commonwealth v. Battle**
**Commonwealth v. Morris**

*Phillip H. Williams,* District Attorney, for Commonwealth.

*Peter J. O'Brien* and *J. Joseph McCluskey,* for defendants.

WILLIAMS, P. J., July 1, 1970.—This matter is before the court on a motion for new trial filed by defendant, William Battle, and on motion for new trial and in arrest of judgment filed by defendant, Georgia B. Morris, following a jury verdict of guilty on charges of possession of narcotics.

The court, over the objection of defense counsel, admitted into evidence certain marijuana found by police officers in an apartment located at 28 North Kistler Street, East Stroudsburg, Pa.

Defendants assert that the ruling of the court was erroneous because the search which resulted in the discovery of the marijuana was constitutionally infirm in that it was made without a valid search war-

rant, and that no voluntary consent to the search was given.

The issue raised by defense counsel in their brief is:

"Did the Defendant William Battle 'voluntarily' consent to the search of the apartment at 28 N. Kistler Street?"

Defendants were arrested on August 16, 1967. On that day, State Narcotics Agent Edward A. Slosky arrested Percy Harris at the Norge Village Laundromat, while in the company of defendant, William Battle, for possession of a marijuana cigarette which had been found in the pocket of a shirt he had left at the laundromat to be laundered. Both Harris and Battle were staying at an apartment located at 28 North Kistler Street, East Stroudsburg, occupied by defendant, Georgia Morris.

Soon after the arrest of Harris, defendant Georgia Morris appeared at the Norge Village, spoke briefly to Battle and then returned to her apartment.

After the departure of Georgia Morris from Norge Village, Agent Slosky, with Harris in his custody, went to the apartment at 28 North Kistler Street, and Miss Morris responded to a knock at the door. Slosky identified himself to Miss Morris as an officer and told her he had a warrant to search the premises for Harris and Battle. Miss Morris advised him he would have to wait until Battle arrived. When Battle arrived, there were present in the apartment Slosky, Miss Morris, Harris, two State policemen and County Detective Seese.

Slosky advised Battle that he had a warrant to search the premises but that it was invalid because it authorized a search of premises located at 28 North Kistler Street instead of the second floor apartment at that address. He stated he would go to a justice of

the peace and obtain another warrant. Battle then told Slosky in the presence of Miss Morris that it was all right to go ahead and search the apartment. Slosky then gave Battle the Miranda warnings which he read from a printed card. He then informed Battle that he did not have to permit the search without a warrant. Battle told him to go ahead and make the search.

The two State policemen and Slosky then proceeded to make the search in the presence of both Battle and Miss Morris.

The search disclosed a marijuana cigarette butt in Miss Morris' bedroom. In the room occupied by Battle, a marijuana cigarette butt was found in an ash tray. Also in this room was found a manila envelope containing a white crystaline powder, one Kool cigarette package containing eight glassine envelopes of suspected marijuana. There was found in a bathroom cabinet one envelope of marijuana. In the vanity room, a hypodermic syringe was found in an ash tray. In the parlor closet was found an eye-dropper and hypodermic needle. Marijuana was found in a garbage pail in the kitchen. A crime laboratory test showed the suspected marijuana to be in fact marijuana.

A petition to suppress the fruits of the search was filed and, after hearing, the court found that defendant Battle had voluntarily consented to the search and dismissed the petition.

The Commonwealth, at the trial, over the objection of defendants' counsel, was allowed to place the marijuana uncovered by the search in evidence.

The jury found both defendants guilty.

The court, in its charge, submitted to the jury the questions whether Battle had voluntarily consented to the search and whether he had such dominion over the apartment as to empower him to authorize such a search. The jury was instructed to find defendants not guilty unless it found beyond a reasonable doubt

that Battle had voluntarily consented to the search and had the authority to consent to the search.

Battle admitted that he told Slosky "go ahead and search the place." He says he did this because Slosky told him that he had a warrant to search the place and he thought he had no other choice. On the other hand, Slosky testified that he told Battle in the presence of Miss Morris that the search warrant was invalid. While Battle denies this, Slosky is corroborated by the other officers present at the time. After Battle told Slosky to go ahead with the search, Slosky testified that he told Battle he did not have to permit the search without a warrant to which Battle replied that it would be all right to go ahead and search. Slosky further testified "so as to clarify it, I told Battle he did not have to permit a voluntary search and he said 'No, you go right ahead and search.'" The jury verdict indicates that the jury believed Slosky and the court likewise believes Slosky.

It is true that Slosky told Battle that he would get another search warrant but such a statement would not render an otherwise voluntary consent involuntary. See Commonwealth v. Wright, 411 Pa. 81, p. 84, where the court said:

"It has . . . been held that such consent or waiver is valid even if made under a threat to procure a search warrant: U. S. v. Haas, 106 F. Supp. 295 (1952)."

In United States v. Haas, supra, the court said:

"An accused cannot assert illegality of a search made with his consent though given in response to a threat to procure search warrant."

Counsel for defendants argue that the decision of the United States Supreme Court in Bumper v. North Carolina, 391 U. S. 543, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968), supports defendant's position that the search was illegal. In that case, defendant was con-

victed of rape. A rifle said to have been used in the perpetration of the crime was introduced in evidence. The police obtained the rifle when they searched without a valid warrant the home of defendant's grandmother. The county sheriff, two of his deputies and a State investigator went to the grandmother's home. One of them announced: "I have a search warrant to search your house." The grandmother replied "Go ahead," and opened the door. The officers found the rifle in the kitchen. The prosecutor, at trial, relied not on a search warrant but upon the consent of the grandmother. The court ruled that the consent was involuntary stating:

"When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority. A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid. The result can be no different when it turns out that the State does not even attempt to rely upon the validity of the warrant, or fails to show that there was, in fact, any warrant at all.

"When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent."

Here, the facts as found by the court, are clearly distinguishable. The officer did not make the search in reliance on a search warrant. He expressly stated to defendants that the search warrant was invalid. He told Battle that he did not have to consent to a search without a search warrant. Battle knew when

he consented to the search that: (1) The officer did not have a valid warrant; (2) he did not have to consent to a search without a search warrant; and (3) if he did not consent, the search would not have been made without a search warrant.

If we had made findings of fact consistent only with the testimony of Battle and Miss Morris, then in our opinion Bumper would control this case. However, we have found that Battle knew the search warrant was invalid before he gave his consent to the search and that he knew that he was not required to consent to the search unless a valid search warrant was first obtained. Accordingly, we conclude that Bumper does not rule this case.

For the reasons stated in this opinion, as well as for the reasons stated in our opinion dismissing the suppression petition, we will deny the motions for new trial and in arrest of judgment, and enter the following

### ORDER

And now, July 1, 1970, the motion of defendant, William Battle, for a new trial is denied. The motion of defendant, Georgia B. Morris, for a new trial is denied, and the motion of Georgia B. Morris in arrest of judgment is denied. Both defendants are hereby directed to appear before this court on July 23, 1970, at 1:30 p.m., for imposition of sentence.